## No. 10,619.

### STATE OF LOUISIANA VS. MISS LAURA GAINES ET AL.

The State can not be sued before her own tribunals without her consent—the question is not affected by the fact that the claim is a demand in reconvention, set up in a suit brought by the State. State vs. Bradley, 37 An. 623.

The State should not be permitted to invoke judicial aid in wresting from the defendants evidences of a serious claim against her, until she has first, by proper legislative action, consented to submit to the courts the determination of all the rights and obligations incident thereto.

#### ON APPLICATION FOR REHEARING.

The decision of this court in State vs. Hart, 46 An. 55, must control.

APPEAL from the Civil District Court, Parish of Orleans.
   *King, J.*

---

*Walter H. Rogers*, Attorney General, for State, Appellee.

---

*W. S. Finney* and *Henry C. Miller*, Attorneys for New Orleans Canal and Banking Company, Defendant and Appellant.

---

The opinion of the court was delivered by

FENNER, J. The State, acting through her Attorney General,

brings this suit to recover from the defendant possessors fourteen State bonds, which, she alleges, were fraudulently and illegally embezzled and put in circulation by her late State Treasurer, E. A. Burke.

The bonds were held by Miss Laura Gaines, and were pledged by her to the Canal Bank, and they are both made defendants.

The State also claims from Miss Gaines a judgment for three thousand six hundred dollars, amount of interest coupons collected by her on said bonds.

The defendants answer, asserting their just title as *bona fide* holders of said bonds, which they assert to be valid and binding obligations of the State, and they pray for judgment rejecting the State's demand, and further decreeing that they be paid by the State in principal and interest, according to the terms of the contract.

From a judgment in favor of the State, the defendants appeal.

The issues involved are three, viz.:

1. The right of the State to oust the defendants of the possession of the instruments purporting to be bonds of the State, and to take the same into her own possession.

2. The right of the State to recover from Miss Gaines the amount of the interest coupons collected by her as having been unduly received.

3. The right of defendants to recover judgment against the State decreeing her liability for the principal and interest of said bonds to be paid according to the terms of her contract.

The third issue just mentioned is one which must be unhesitatingly decided against the defendants.

The State can not be sued before her own tribunals without her consent, and she has given no such consent. The question is not affected by the fact that the claim is a demand in reconvention set up in a suit brought by the State. State vs. Bradley, 37 An. 623.

So far as the other two issues are concerned the rights of the defendants as *bona fide* holders of said bonds, and the liability of the State to them as such, are urged as defences to the demands of the State, and if it were necessary for us to determine these questions in order to decide the issues between the parties, it might be our duty to do so.

But we are strongly impressed with the sense of our duty to abstain from considering or determining the liability of the State as a

debtor on these bonds, which the political authority of the State has not consented to submit to judicial arbitrament, unless such determination is absolutely essential in order to dispose of those issues which are validly submitted to us. Our decision thereon would be in no manner binding upon or executory against the State, and would simply operate an unwarranted intrusion of our opinion in matters which are confided to the free discretion of the political branch of the government.

We therefore felt bound carefully to examine the issues presented, in order to see if they admitted of determination on any grounds which did not involve the necessity of considering questions of such vital moment to both the State and the holders of these instruments.

We have concluded that these issues may be readily determined on grounds involving no such necessity.

So far as the right of the State to recover possession of the bonds is concerned, we must consider the nature of such instruments. They belong to the class of things known at common law as *choses in action*, or demands enforceable by action. With us they are merely evidences of debt, and belong to the class of incorporeal rights. They are not, at common law, subjects of larceny, though by statutes, in this and many other States, they have been made so. 1 Bish. Cr. L., Sec. 578.

They are no doubt subject to corporeal seizure under judicial process, and are treated in many aspects like corporeal property. They may become the subjects of action for specific recovery. But, nevertheless, their essential character and value consist in their quality as evidences of debt.

The Canal Bank is undoubtedly the lawful holder and possessor of these bonds, acquired by it in good faith and for a valuable consideration. They represent, on their face, an obligation of the State of Louisiana, signed by her Governor and Treasurer and under the seal of State, all attached in accordance with law.

They are the sole evidence which the bank has of the claim which she asserts against the State.

Where is the law or the equity which would authorize the State to invoke judicial process to wrest from the hands of her apparent creditor the sole evidence of his claim, without at least submitting

28

to the court for valid and binding determination all the rights and obligations arising thereon? We think there is none.

The demand of the State is entirely one-sided. If we decide in favor of the State, the judgment is executory, the defendants are ousted of possession of the sole evidence of their claim, and their mouths are forever closed. If we decide in favor of defendants, they acquire no new right under the judgment, but are simply left in *statu quo* and at the mercy of the State.

We think it too clear to require further argument that the State should not be permitted to invoke judicial aid in wresting from defendants their lawful possession of these evidences of a serious claim against her, until she has first, by proper legislative action, consented to submit to the courts the determination of all the rights and obligations incident thereto.

The claim for the return of the interest coupons alleged to have been unduly collected and received by Miss Gaines might have presented these questions in a different shape, requiring their determination—that is, a suit for money unduly received, in which we would be bound to determine whether it was unduly received or not, and which would necessarily involve the right of Miss Gaines to receive and the obligation of the State to pay.

But, as the case is presented, the evidence clearly establishes that the bonds were unlawfully put in circulation by E. A. Burke, and the only ground upon which any holder thereof could assert any rights thereon against the State would be that they were negotiable instruments, and that he acquired them before maturity in good faith and for a valuable consideration. After proof of their unlawful issue the burden was upon Miss Gaines to show that she acquired them in good faith. This burden she has entirely failed to discharge. We do not mean to asperse, in the slightest degree, the actual good faith of this lady. It was simply her misfortune, as this record shows, to be in a condition of health and nervous prostration which, in the opinion of her physician, rendered it improper and unsafe for her to be examined in this case, either at the trial or at any reasonably certain date in the future. Her counsel, therefore, submitted the case without her own or any other evidence, on the subject of the method and circumstances under which she acquired these bonds. This is fatal to her defence, independently of any question as

State vs. Gaines et al.

to the rights of holders in good faith of these instruments, and we have no ground for reversing the judgment for two hundred dollars rendered against her in the court *a qua*.

In thus disposing of this appeal we wish it distinctly understood that we make not the slightest intimation of an opinion on the rights and obligations arising between holders in good faith of such bonds and the State. When a case comes before us requiring the expression of our judicial opinion on those delicate and difficult questions, we shall not shirk the responsibility, but our sense of official duty requires us to abstain from expressing such opinions unless absolutely necessary to the decision of a pending cause.

It is therefore ordered, adjudged and decreed that the judgment appealed from, in so far as it maintains the sequestration and condemns the defendants to return to the State the bonds involved, be annulled, avoided and reversed, and that the demand of the State, to that extent, be dismissed, and that the sequestration be dissolved; and that, in other respects, said judgment be affirmed.

### DISSENTING OPINION.

BREAUX, J. The issues are presented.

The plaintiff and the defendant pray for a decision on the merits, settling the vexing and perplexing questions growing out of the embezzlement of certain bonds from the State Treasurer's office.

The effect of good faith, its scope, extent, the right of those who have become owners for valuable consideration without notice, can be decided at this time and the question forever settled.

If the holders of these fourteen State bonds own values for which the State is bound, they should be relieved from the claim on their property.

If they are valueless, delay serves no purpose.

The political branch of the government will be influenced by the decision as well at this time as at any time hereafter.

It is preferable to decide the issues at once and not to postpone questions that must be decided later.

These bonds should remain in *gremio legis* until the rights of the the parties in interest are finally determined.

I therefore dissent.

ON APPLICATION FOR REHEARING.

McENERY, J.  The consideration of the application for a rehearing in this case, by consent of counsel, was deferred until after the decision of the case of State vs. Hart, recently decided and reported 46 An. 55.

The issues involved in the two cases are identical.

It will be unnecessary, and it would be fruitless of results to reopen the case for argument and postpone our decree.

We will refuse the rehearing, and will annul our former decree, and will now enter such a decree as should have been rendered in the first instance.  Therefore, for the reasons assigned in case No. 10,899, State vs. Hart, it is ordered, adjudged and decreed that our former decree rendered herein be annulled, and it is now ordered, adjudged and decreed that the judgment appealed from be affirmed.

Rehearing refused.

Miller, J. recused.