FRENCH REPUBLIC (la Republique Française) v. INLAND NAV. CO. et al.

(District Court, E. D. Missouri, E. D. February 21, 1920.)

No. 5145.

1. INTERNATIONAL LAW ⬤⟶10—IMMUNITY OF SOVEREIGN FROM SUIT.

A friendly sovereign nation, bringing suit in the courts of the United States, is subject to any set-off or counterclaim which may be pleaded as a defense to its claim in whole or pro tanto, but does not by bringing the suit waive its immunity from suit, and subject itself to a counterclaim upon which an affirmative judgment is asked, although it would be permissible as against a private suitor.

2. SET-OFF AND COUNTERCLAIM ⬤⟶9—"COUNTERCLAIM" DEFINED.

A "counterclaim" is a cause of action in favor of defendant and against plaintiff arising out of the transaction or contract pleaded by plaintiff, and on which plaintiff's claim is bottomed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Counterclaim.]

In Equity. Suit by the French Republic (la Republique Française) against the Inland Navigation Company and the Philip A. Rohan Boat, Boiler & Tank Company. On motion to strike out defendants' counterclaim. Granted.

White & Case, of New York City, and Frederick W. Lehman and Paul V. Janis, both of St. Louis, Mo., for plaintiff.

Rabenold & Scribner, of New York City, and Taylor, Chasnoff & Willson, of St. Louis, Mo., for defendants.

FARIS, District Judge. The plaintiff sued defendant Inland Navigation Company (hereinafter for brevity called simply defendant) and another, as holder of an alleged lien, to recover from defendant a certain sum of money, to wit, $330,000, paid to defendant as payment in part upon a contract, whereby defendant agreed to alter and complete, sell, and deliver to plaintiff three certain barges. Defendant, averring that it has been damaged by reason of an alleged breach of

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the contract on plaintiff's part, asks, as affirmative relief, judgment against plaintiff by way of counterclaim for the sum of $600,000.

[1] Plaintiff moved to strike out the counterclaim of defendant, for that, since plaintiff is an independent, friendly sovereign nation it may not be, it is contended, sued in a friendly jurisdiction without its consent, even by way of counterclaim.

Plaintiff admits that any damages which may have accrued to defendant may be used by it as a defense or counterclaim pro tanto, by way of a defense, or set-off against the demand of plaintiff. The law is unquestionably in consonance with this concession; so that when a sovereign sues in its own courts, or even in a friendly foreign jurisdiction, so much of a demand (which I may designate for lack of a better word as "counterclaimable") as may serve as a defense, and which is sufficient to liquidate the whole or any part of plaintiff's demand, may be set up by the defendant. State v. Bank, 106 Ind. 435, 7 N. E. 379; Com. v. Barker, 126 Ky. 200, 103 S. W. 303; State v. Bank, 10 Ohio, 91.

Defendant concedes: (a) That a sovereign cannot be sued in its own courts unless by its consent; also—or if it does not so concede in a thorough-going way, the law seems clear upon the propositions—(b) that the Republic of France may sue in this court (The Sapphire, 11 Wall. 174, 20 L. Ed. 127; King of Prussia v. Kuepper, etc., 22 Mo. 550, 66 Am. Dec. 639); and (c) that it may not be sued in the courts of a friendly nation except by its own consent (Beers v. Arkansas, 20 How. 527, 15 L. Ed. 991; Nicholl v. U. S., 74 U. S. [7 Wall.] 122, 19 L. Ed. 125; The Siren, 74 U. S. [7 Wall.] 152, 19 L. Ed. 129).

In the Beers Case, supra, at page 529 of 20 How. (15 L. Ed. 991), the Supreme Court of the United States, upon this and another point pertinent in the instant case, said:

"It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another state, And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it."

But the defendant insists that, since plaintiff voluntarily submitted itself to the jurisdiction of this court for the collection of a demand, it must be held, by the same token, to have submitted itself to any proper legal proceeding or procedure in the case to which any private person, or corporation, or any individual litigant whatever, would be amenable. Plaintiff concedes so much of this contention as applies to a mere defensive set-off, as discussed above, and the matter of practice and procedure; but it contends that a counterclaim, whereby a judgment for substantial damages is sought, does not fall within the category of mere practice and procedure, but that such a claim is in its legal effect a new and affirmative action to which the sovereign must give its consent before it can be thus sued, and that no such consent

is to be deduced from the mere act of plaintiff in bringing suit in a case wherein ordinarily a counterclaim would be permissible. For there is no doubt that this case is one wherein the counterclaim pleaded would lie against any private person or corporation, and that it will likewise lie against plaintiff herein, unless it be precluded by the fact of plaintiff's status as a friendly independent sovereignty. Thus it will be seen that the point before me falls into a narrow compass when the several concessions and the settled law of the case are considered.

[2] So far as concerns this case, a counterclaim is a cause of action in favor of defendant and against the plaintiff, arising out of the transaction or contract pleaded by plaintiff, and on which plaintiff's claim is bottomed. Section 1807, R. S. Mo. 1909; Gamewell, etc., Co. v. Fire, etc., Co., 116 Ky. 759, 76 S. W. 862. It is so far an independent action as that it must be pleaded with like sufficiency as the law requires, if a new and independent action were brought by the defendant against the plaintiff. Com. v. Barker, 126 Ky. 200, 103 S. W. 303; Emmerson's Adm'r v. Herriford, 71 Ky. (8 Bush.) 229; Ross v. Ross, 60 Ky. (3 Metc.) 274. The verdict of the jury must be responsive to the issues made by the counterclaim (Nowell v. Mode, 132 Mo. App. 232, 111 S. W. 641; Winkelman v. Maddox, 119 Mo. App. loc. cit. 661, 95 S. W. 308; Marshall v. Armstrong, 105 Mo. App. 234, 79 S. W. 1161), and after the filing of a counterclaim by a defendant a plaintiff cannot dismiss, or take a voluntary nonsuit in the action, without the defendant's consent thereto.

There is, as forecast above, scant doubt that the great weight of opinion and authority leans strongly to the view expressed by Mr. Justice Taney in the case of Beers v. Arkansas, supra, that no sovereign can be sued without its consent, either in its own courts or in the courts of any other friendly jurisdiction. The Schooner Exchange, 7 Cranch, 116, 3 L. Ed. 287; Kingdom of Roumania v. Guaranty Trust Co., 250 Fed. 341, 162 C. C. A. 411, Ann. Cas. 1918E, 524; Hassard v. U. S. of Mexico, 173 N. Y. 645, 66 N. E. 1110; Le Parlement Belge, 28 Weekly Rep. & Dig. 642; Nicholl v. U. S., 74 U. S. (7 Wall.) 122, 19 L. Ed. 125; The Sapphire, 78 U. S. 164, 20 L. Ed. 127; Blackstone, c. VII, title "The King's Prerogative."

Does such sovereign, by the mere fact of going into the courts of a friendly foreign jurisdiction, so by waiver give its consent to being sued by way of counterclaim? I am constrained to hold that it does not. It is, of course, apparent that an insuperable difficulty, perhaps even an utter impossibility, will inevitably be met in enforcing the payment of any judgment which might be obtained upon the counterclaim against the plaintiff herein. But this is not decisive, since the courts ordinarily will not stop to consider whether a judgment, if decreed, can or cannot be collected. Such a consideration is negligible upon the question of the right to maintain an action. Here, short of a serious disturbance of international peace, it may be conceded that a judgment against the Republic of France in favor of defendant upon its counterclaim could never be collected save with the consent of France. And while in a sense, upon this consideration, the point

involved here is academic, it is yet of great pith and moment as a principle of international law.

Keeping in mind the nature and effect of an action by way of counterclaim, I think the authorities, the analogous cases, and the reason of the thing all sustain the conclusion, which I reach, that such a proceeding is not permissible. While there is scarcely a dissenting view upon the point that, as against a sovereign electing to sue an individual or a public or private corporation in its own courts, or in the courts of a friendly foreign jurisdiction, such defendant may, as a defense to the demand of the sovereign, set off a part, or the whole, of plaintiff's demand by pleading a demand which might otherwise form the subject-matter of a counterclaim (State v. Bank, supra; State v. Bank, supra), and that such a foreign sovereign is amenable, just as is any other plaintiff, to mere matters of practice and procedure, yet no affirmative judgment can be sustained as upon a counterclaim against the sovereign, whereby the sovereign shall be compelled or adjudged to pay money or any other thing of value. The Siren, 74 U. S. (7 Wall.) 152, 19 L. Ed. 129; Reeside v. Walker, 11 How. 272, 13 L. Ed. 693; U. S. v. Eckford, 73 U. S. (6 Wall.) 484, 18 L. Ed. 920; Treat v. Farmers' Loan & Trust Co., 185 Fed. loc. cit. 763, 108 C. C. A. 98; De Groot v. U. S., 5 Wall. 419, 18 L. Ed. 700.

In the entirely analogous case of an individual attempting to counterclaim against a state of the American Union, when sued by the latter in its own courts, the unanimity of the holdings that such a counterclaim (beyond such part thereof as will suffice to form a defense) is not permissible, is illuminating. The below cases so hold: White v. Governor, 18 Ala. 767; Holmes v. State, 100 Ala. 291, 14 South. 51; People v. Miles, 56 Cal. 401; State v. Leckie, 14 La. Ann. 636; State v. Bradley, 37 La. Ann. 623; State v. Gaines, 46 La. Ann. 431, 15 South. 174; State v. Railroad, 34 Md. 344; Auditor Gen. v. Board, etc., 106 Mich. 662, 64 N. W. 570; Raymond v. State, 54 Miss. 562, 28 Am. Rep. 382; People v. Dennison, 84 N. Y. 272; Com. v. Matlack, 4 Dall. (Pa.) 303, 1 L. Ed. 843; Comm. v. Philadelphia County, 157 Pa. 531, 27 Atl. 378; State v. Corbin, 16 S. C. 533; Moore v. Tate, 87 Tenn. 725, 11 S. W. 935, 10 Am. St. Rep. 712; Borden v. Houston, 2 Tex. 594; Bates v. Republic of Texas, 2 Tex. 616; Com. v. Todd, 72 Ky. (9 Bush.) 708; Com. v. Owensboro & Nashville Ry. Co., 81 Ky. 572.

The very recent case of Kingdom of Roumania v. Guaranty Trust Co., 250 Fed. 341, 162 C. C. A. 411, Ann. Cas. 1918E, 524, is by analogy very persuasive authority in support of the conclusion which I have reached. The Kingdom of Roumania sued the Guaranty Trust Company in a District Court of the United States for the recovery of money, forming the balance of a certain fund theretofore deposited with defendant therein. One Arditti had theretofore claimed this identical money, and had brought suit therefor in a state court against the Guaranty Trust Company and the Kingdom of Roumania. Desiring to protect itself fully, and averring itself to be as to the money in controversy a mere stakeholder, defendant Trust Company got an order from the District Court requiring both Arditti and the Kingdom

of Roumania to show cause why Arditti should not be substituted as defendant in the case and defendant Trust Company discharged, on payment into court of the money on deposit. The District Court sustained the motion and ordered that Arditti be impleaded.

This ruling was held by the Court of Appeals of the Second Circuit to be error. Upon this point the court, among other things (250 Fed. at page 343 et seq., 162 C. C. A. 413), in the reported case, said:

"It is the long-accepted law that a foreign sovereign cannot be sued, nor his property attached, in the courts of a foreign friendly country without his consent [citing cases]. Nor can the defendant, when sued by a foreign sovereign, avail himself of any counterclaim or set-off, except perhaps a set-off arising out of the same transaction. Under no circumstances can he obtain an affirmative judgment. People v. Dennison, 84 N. Y. 272. * * * We are clear that the action by the Kingdom of Roumania to recover a debt owed it by the Guaranty Trust Company was not a waiver of its immunity as a sovereign to be sued by other parties. If this be not so, the immunity can be frittered away either by interpleader or attachment in any case when a foreign sovereign undertakes to collect a debt owed it."

Constrained by the above cases, and others, as well as by the reason of the thing, I am of the opinion that the motion of plaintiff, to strike from defendants' answer all that portion thereof which attempts to set up a counterclaim, and obtain thereby affirmative relief against the plaintiff, ought to be sustained; and it is so ordered.